WILLIAM NELSON, JR., et al., Appellants, *v.* FREDERICK H. ODIORNE, Respondent.

A charter party provided that a full cargo under deck should be furnished by the charterer. It further provided that the cargo should be delivered and received on board, as customary, at the place of delivery; and if any lighterage was necessary, it was to be paid by the charterer.—*Held*, in an action by the owner against the charterer to recover full freight, that the contract to provide a full cargo was not performed, by the charterer furnishing coal at a wharf, where, by reason of insufficiency of water, the vessel could not take on a full cargo, but where it was practicable to complete the cargo by lighters; and that the fact that the "customary" way of loading at that place was at the wharf, did not relieve the charterer from his obligation to provide lighterage.

(Argued April 20; decided May 23d, 1871.)

APPEAL from a judgment of the General Term of the Supreme Court, in the first judicial district, affirming a judgment, entered on the verdict of a jury, in favor of defendant.

The action was brought upon the alleged breach of a charter party, made between the parties on the 21st of October, 1864, by the terms of which the plaintiffs chartered the ship J. P. Wheeler to the defendant, for a voyage from Cow Bay to New York, with a cargo of coal to be

furnished by the defendant. The defendant agreed to furnish a full cargo of coal for the vessel, and to pay freight at the rate of $7.50 per ton of 2,240 pounds. The defendant guaranteed eighteen feet of water at Cow Bay, and the agreement also provided that vessels of greater draught were to be loaded under the regulations of the mining company. It was further agreed that the cargo should be delivered and received on board as customary at Cow Bay, and if any lighterage should be necessary, it should be paid by the charterer. A full cargo for the ship was 1,250 tons; 1,029 tons were furnished while the ship lay at the wharf of the company, when, by reason of the insufficiency of water, the ship was obliged to haul off from the wharf. Plaintiff claimed that there was not eighteen feet of water at Cow Bay. The ship struck several times on the bottom, causing great damage. Lighters were refused, by means of which the cargo might have been completed. There were lighters in the bay. The ship finally sailed with only 1,029 tons on board. When fully loaded, the ship's draught of water was twenty feet and six inches; in ballast, fourteen feet; half loaded, sixteen and a half feet aft and sixteen feet forward; with the cargo she had on, she drew seventeen and a quarter feet. By the measurement of Capt. Ladd (commanding the ship), the water at Cow Bay, at the wharf, was at low water twelve and a half feet, and at high water seventeen and a half feet.

*John H. Reynolds*, for the appellant.

*Henry H. Anderson*, for the respondent.

ANDREWS, J. The right of the plaintiffs to recover freight, not only for the coal actually carried, but for what might have been carried, if the vessel had taken a full cargo, depends upon the construction of the charter party, and the respective obligations of the parties created thereby.

In general, where the charterer hires the whole tonnage carrying capacity of a vessel, it is in the nature of a con-

tract, whereby the owner agrees to carry a cargo which the charterer agrees to furnish. And if the charterer hires the whole burden of the vessel, under an express or implied agreement to load it with a full cargo, at a certain freight, and fails to provide it, he is liable, if the owner is not in default, to the same extent, as if he had furnished it. (1 Par. on Mer. Law, 232, 242 ; *Duffin* v. *Hayes,* 15 J., 326.)

If, however, the charterer hires the entire ship, and is to pay a certain price per ton for such goods as he shall put upon it, and there is no express or implied covenant to load it as full, then the owner can only recover freight upon the goods shipped. (Abbott on Shipping, 412, and cases cited.)

The plaintiff, by the charter party, upon which this action was brought, covenanted that the vessel should proceed on a voyage from New York to Cow Bay, N. B., and there receive on board coal to be transported to New York.

The defendant, on his part, engaged to provide and furnish to the vessel a full cargo of coal, under deck, and to pay to the plaintiff for the transportation a specified rate per ton.

He also guaranteed that there was a depth of eighteen feet of water at Cow Bay ; and the contract provided that vessels of greater draft should be loaded under the regulations of the mining company at the Block House mine.

The tonnage of the vessel was stated in the charter party, and it was proved that she could carry, under deck, 1,300 tons of coal, and that when fully loaded her draft exceeded twenty-one feet.

The vessel proceeded on her voyage, and took on at the wharf of the mining company at Cow Bay, 1,050 tons or thereabout of coal ; and the testimony, on the part of the plaintiff, tended to show that the depth of the water at the wharf would not admit of more to be taken there.

The plaintiff sought to establish a breach of the warranty as to the depth of water at Cow Bay ; and, upon this subject, there was conflicting evidence. But it is unnecessary, in the view we take of the case, to consider the question raised upon this provision in the contract.

The master of the vessel, after loading what could be taken at the wharf, took his vessel into deeper water and anchored, and then called upon the mining company to procure lighters, and complete the lading of the vessel; and this method was practicable. The company refused to furnish lighters or to hire schooners for this purpose, although the latter might have been procured.

We will now refer to another provision of the charter party upon which this controversy mainly turns.

After the clauses to which we have referred, it proceeds as follows : "It is further agreed that the cargo shall be delivered and received on board, as customary, at Cow Bay, and if any lighterage is necessary, it must be paid by the charterer."

It appeared in proof that it was customary for the mining company, at the time this contract was made, to load coal into vessels from their wharf, and that the practice of using lighters for this purpose had been discontinued; and that the company had, at the time, coal at the wharf sufficient to load the vessel in full, and were ready to deliver it there to the extent required.

The court charged the jury, in substance, that the defendant had performed his contract, when coal was furnished at the wharf in the customary manner, and was not bound to provide lighters or to complete the loading of the vessel elsewhere; and to this part of the charge the counsel for the plaintiffs excepted.

The draft of the plaintiffs' vessel when loaded was known to, or might have been ascertained by, the parties, when the contract of affreightment was made.

The defendant must be held to have known at that time that a depth of eighteen feet of water at the wharf of the mining company was insufficient to enable the vessel to take a full cargo at that point.

He engaged, however, as we have seen, to "provide and furnish" the vessel with a full cargo, which the plaintiffs, on their part, agreed to "receive on board."

This provision was plainly for the benefit of the plaintiffs, who were interested in securing the full freight which the carrying capacity of the vessel would allow.

The provision in the contract, that vessels of greater draft than eighteen feet should be loaded under the regulations of the mining company, indicates that the parties contemplated that vessels drawing more water than the depth guaranteed at Cow Bay, might nevertheless be provided with a cargo.

If the defendant contracted to furnish a full cargo, he would not be excused from performance, although performance was difficult, or even impossible.

The duty was brought upon him by his own act, and he must discharge it or become liable, as upon a breach of the contract. (*Oakley* v. *Morton*, 11 N. Y., 25 ; *Harmony* v. *Bingham*, 12 id., 99.)

It is claimed, however, that the part of the contract, wherein the defendant stipulates to furnish a full cargo, is qualified by the subsequent clause providing that the coal shall be delivered and received on board the vessel, " as customary," at Cow Bay ; and as no custom to load by the use of lighters or otherwise than at the wharf existed at the time, the defendants were not bound to furnish them.

This argument overlooks the remainder of the same clause, which declares that "if lighterage shall be necessary, it must be paid by the charterer," and which very clearly implies that it might be necessary to adopt that method of delivering the cargo.

In short, there was no custom beyond that which regulated the delivery to vessels, which could be loaded at the wharf. True, the defendant contracted to furnish to the plaintiff a full cargo, and if lighterage was necessary in order to do it, to furnish it at their expense.

It is a familiar rule in the interpretation of contracts that the general article is not to be set aside upon doubtful words, and that the separate clauses, unless plainly inconsistent, are to be construed in aid of and not in contravention of the main

purpose and intent of the parties appearing in the instrument. (*Parkhurst* v. *Smith*, Willes, 332.)

The part of the charge alluded to was erroneous, and a new trial should be granted.

Ch. J., ALLEN, FOLGER and RAPALLO, JJ., concur. GROVER, J., does not vote. PECKHAM, J., does not sit.

New trial granted.